```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
UNITED STATES OF AMERICA,           x
                                    x      06 Cr. 31 (SWK)
                                    x
        -against-                   x   **MEMORANDUM OPINION**
                                    x
                                    x
ABDULHAKEEM MUKHTAAR,               x
                                    x
    Defendant.                      x
------------------------------------X
```

**SHIRLEY WOHL KRAM, U.S.D.J.**

This matter is before the Court on the request of Martin J. Siegel ("Siegel"), attorney for defendant Abdulhakeem Mukhtaar ("Mukhtaar"), for compensation in excess of the statutory maximum imposed by the Criminal Justice Act of 1964 (the "CJA"). In CJA Voucher No. 080416000285, after adjustments made by the Clerk of Court, Siegel requests compensation in the amount of $8,690.80 in attorney's fees. As required by 18 U.S.C. § 3006A(d)(3) and this Circuit's Revised Plan for Furnishing Representation Pursuant to the Criminal Justice Act (the "Revised Plan"), the Court has reviewed Siegel's itemized hourly worksheets and written justifications for compensation in excess of the statutory maximum. Upon review of these documents, however, the Court concludes that such excess compensation is not warranted in this case, and instead certifies compensation in the amount of $6,478.40.

## I. BACKGROUND

On February 1, 2006, Mukhtaar pleaded guilty under a plea agreement to one count of conspiracy to defraud the United States, one count of bank fraud, one count of treasury check theft, two counts of access device fraud, and one count of fraud with identification documents. See United States v. Mukhtaar, 06 Cr. 31 (SWK), Dkt. No. 23 (accepting guilty plea previously entered before magistrate judge). Mukhtaar was released on a personal recognizance bond pending sentencing. During his release, Mukhtaar cooperated with the Government in an ongoing investigation, with the expectation that he would testify during future trials. In June 2007, however, the Government notified the Court that Mukhtaar had violated the terms of his plea agreement by committing similar, fraud-related crimes, and had thereby forfeited the benefits of his cooperation agreement.

Siegel was appointed as Mukhtaar's CJA counsel on September 27, 2007, after the previously appointed defense counsel withdrew due to a conflict of interest. Siegel thus represented Mukhtaar during the sentencing phase of his case. Sentencing was adjourned several times, once at the request of the Government, see United States v. Mukhtaar, 06 Cr. 31 (SWK), Dkt. No. 27, and twice at the request of defense counsel, United States v. Mukhtaar, 06 Cr. 31 (SWK), Dkt. Nos. 26, 28. The parties appeared before the Court on March 5, 2008, for sentencing. At

that time, however, the Court concluded that a further adjournment was necessary, in order to provide defense counsel additional time to review with Mukhtaar the written submission that the Government had filed only two days earlier. Tr. 10, March 5, 2008. The Court also ordered additional written submissions from both sides. See <u>United States v. Mukhtaar</u>, 06 Cr. 31 (SWK), Dkt. No. 29. Ultimately, Mukhtaar was sentenced on April 9, 2008. <u>United States v. Mukhtaar</u>, 06 Cr. 31 (SWK), Dkt. No. 32.

## II. DISCUSSION

### A. Legal Standard

The CJA directs the courts to "fix the compensation and reimbursement to be paid to the attorney" representing an indigent defendant in a criminal case. 18 U.S.C. § 3006A(d)(5). Under the CJA and the Revised Plan, the maximum compensation in a felony case is $7,000. 18 U.S.C. § 3006A(d)(3); Revised Plan Part IX.A.2. Compensation in excess of the maximum is permitted if (a) the district court certifies that such payment is "necessary to provide fair compensation," and (b) the payment is approved by the Chief Judge of the Second Circuit or his delegate. <u>See</u> Revised Plan Part IX.B. When applying for compensation in excess of the statutory maximum, CJA counsel must "submit a detailed memorandum supporting and justifying counsel's claim that the representation given was in an extended

or complex case, and that the excess payment is necessary to provide fair compensation." Id.

Courts have interpreted the CJA to mandate a two-step inquiry. See, e.g., United States v. Bailey, 581 F.2d 984, 987 (D.C. Cir. 1978); United States v. Keeble, 03 Cr. 399-D, 2008 WL 1792935, at *1 (N.D. Tex. Apr. 16, 2008); United States v. Blandford, 30 F. Supp. 2d 1080, 1081 (C.D. Ill. 1998); United States v. Tutino, 419 F. Supp. 246, 249 (S.D.N.Y. 1976). First, the court must determine whether the case was extended or complex. "'Extended' representation . . . [involves] a substantial investment of time," while "'complex' representation refers to the intricacies of the case and their corresponding call on counsel's intellectual resources." Bailey, 581 F.2d at 987. Notably, "the representation may be either 'extended or complex'; it need not be both." Id. Second, the court must determine whether the requested compensation is "necessary to provide fair compensation." Id. (internal quotation marks and citation omitted). The D.C. Circuit has summarized the test as follows:

> [E]xcess compensation is to be allowed if . . . the legal or factual problems in the case, or the quantity or nature of the service demanded, are "significantly" greater than average. The point of reference is the case commonly encountered, and the comparison must reveal enough margin of difference to justify a confident conclusion that excess compensation is essential to fairness.

4

Id. at 989 (citation omitted).

The certification process "is not one involving a 'rubber stamp.' It is a meaningful[,] congressionally[-]mandated step that requires detailed justification not only by the lawyer, but also by the approving judge." United States v. Sepulveda, 502 F. Supp. 2d 1104, 1105 (D. Mont. 2007); see also Tutino, 419 F. Supp. at 249 (citation omitted). "Attorneys seeking compensation have the burden of providing sufficient details to support the contention that a case is more complex or time-consuming than the average case," and that the hours claimed are reasonable. United States v. Diaz, 802 F. Supp. 304, 308 (C.D. Cal. 1992) (internal citation omitted). Additionally, when calculating the appropriate amount of compensation, courts must carefully navigate the tension inherent in the policies underlying the CJA. On one hand, representing indigent defendants is a form of public service; thus, "the [CJA] was never intended to provide full compensation for an attorney's services or to provide fees equal to those charged in private practice." Blandford, 30 F. Supp. 2d at 1082 (citing Mills v. United States, 713 F.2d 1249, 1256-57 (7th Cir. 1983), cert. denied 464 U.S. 1069 (1984)); see also Sepulveda, 502 F. Supp. 2d at 1110; United States v. Anderson, 03 Cr. 330-D, 2005 U.S. Dist. LEXIS 16013, at *14 (N.D. Tex. Aug. 3, 2005) (citations omitted); Diaz, 802 F. Supp. at 307; Tutino, 419 F. Supp. at 253 (citation omitted). On the

other hand, the Act was also intended to provide indigent defendants with meaningful representation by competent counsel, see 18 U.S.C. § 3006A(a); Keeble, 2008 WL 1792935, at *2, "and that objective is disserved by a narrow and miserly construction of the excess-compensation provision," Bailey, 581 F.2d at 989.

**B. Siegel's CJA Voucher**

**1. The Case Was Neither Extended Nor Complex**

As justification for his excess compensation request, Siegel stated in his original affirmation only that he "had to review a significant amount of documents and other materials in connection with this prosecution." Courts have rejected conclusory statements of this nature. See, e.g., United States v. Browne, 407 Cr. 223, 2008 WL 878919, at *1 (S.D. Ga. Mar. 1, 2008). In response to the Court's April 28 Order seeking additional justification, see United States v. Mukhtaar, 06 Cr. 31 (SWK), Dkt. No. 35, Siegel stated that he "can add no additional information other than what has been previously submitted to this Court," but added that he believed the amount sought to be "fair and reasonable," (Siegel's Letter, May 6, 2008). Siegel's refusal to provide additional explanation of the case's purported length or complexity makes the Court's evaluation all the more difficult. See Bailey, 581 F.2d at 990. Although the Court may use its firsthand knowledge of Mukhtaar's case when determining whether excess compensation is warranted,

id., it does not have firsthand knowledge of all of Siegel's activities, and it cannot certify that which has not been proven with adequate specificity, cf. Diaz, 802 F. Supp. at 309 ("Any vagueness in the nature of the representation must be resolved against counsel[,] who has the burden of showing the justification for waiver of the maximum amount and reasonableness of hours.") (citing Tutino, 419 F. Supp. at 389).

When determining whether a case qualifies as "extended," courts have considered a variety of factors, including the duration of the representation, see Keeble, 2008 WL 1792935, at *2, the quantity and nature of the charged offenses, see Anderson, 2005 U.S. Dist. LEXIS 16013, at *6-*7; United States v. Vead, 03 Cr. 422-D(01), 2005 WL 1025798, at *2 (N.D. Tex. Apr. 29, 2005), whether the case proceeded to trial, see Anderson, 2005 U.S. Dist. LEXIS 16013, at *6-*7, *10; Blandford, 30 F. Supp. 2d at 1081, and whether the attorney faced any other significant challenges during the course of the representation.

Here, none of these factors supports the conclusion that the case was extended. Siegel represented Mukhtaar for approximately six-and-one-half months. Although the case involved criminal activity spanning several years, Mukhtaar had already decided to plead guilty by the time that Siegel was appointed as counsel. Siegel's in-court appearances were limited to two sentencing hearings. Finally, Siegel did not claim, and

7

the Court did not observe, any other circumstances that would have made representation of Mukhtaar more challenging. Cf. Keeble, 2008 WL 1792935, at *2 (classifying representation as "extended" due to need to determine defendant's mental competence); Vead, 2005 WL 1025798, at *2 (concluding that case was extended due to, inter alia, defendant's various medical and psychological problems). Therefore, excess compensation is not justified based on a theory of "extended" representation. Cf. Blandford, 30 F. Supp. 2d at 1081 (holding that six-month representation of defendant who pleaded guilty with no trial did not qualify as "extended").

Courts have also used a multi-factor approach when ascertaining the complexity of a criminal representation. "Complex" cases are often characterized by one or more of the following factors: unusual or difficult legal or factual issues, see Bailey, 581 F.2d at 987, 990; Anderson, 2005 U.S. Dist. LEXIS 16013, at *10, multi-count indictments, see Anderson, 2005 U.S. Dist. LEXIS 16013, at *10, "voluminous evidence," id., and other circumstances, such as numerous or complex defenses, that require "a greater than average amount of time or skill in preparing the defense," Diaz, 802 F. Supp. at 311.

Again, none of the preceding factors is present in this case. As discussed above, the fact that Mukhtaar had already pleaded guilty by the time of Siegel's appointment largely

8

negates any complexity inherent in the multi-count indictment. Additionally, although Siegel made several objections to the Presentence Investigation Report (PSR), they did not concern unique or unusually complicated aspects of the law, and the Court ultimately found them to be without merit. Cf. Sepulveda, 502 F. Supp. 2d at 1109; United States v. Haslip, 96 Cr. 10071-02, 1997 WL 471731, at *1 (D. Kan. 1997). Siegel's conclusory affirmation notwithstanding, the documents pertaining to the case are not so numerous as to qualify as "voluminous." The discrepancy between the loss-calculation analysis presented in the PSR and that in the Government's written sentencing submissions, as well as the evolution of the Government's calculation from submission to submission, compare United States v. Mukhtaar, 06 Cr. 31 (SWK), Dkt. No. 43, at 5-6, with United States v. Mukhtaar, 06 Cr. 31 (SWK), Dkt. No. 44, at 2-3, made this case somewhat more complex than it might have been otherwise. This factor, however, standing alone, did not make the case "significantly" more complex than average. See Bailey, 581 F. 2d at 989 (internal quotation marks and citation omitted). Because the Court finds insignificant justification for a finding that Siegel's representation of Mukhtaar was either extended or complex, it cannot certify compensation in excess of the statutory maximum.

**2. Establishing Fair Compensation**

Having concluded that reduction of the requested fee to a level at or below the statutory maximum is necessary, the Court must now determine a specific fee that would provide fair compensation to defense counsel. In doing so, the Court remains mindful of the purposes of the CJA, the burden of justification placed on attorneys, and the fact that "fair compensation often is found to mean less than the amount requested." Blandford, 30 F. supp. 2d at 1082 (internal quotation marks omitted) (collecting cases); see also Anderson, 2005 U.S. Dist. LEXIS 16013, at *14; Haslip, 1997 WL 471731, at *2 (noting that reduction of claimed compensation does not indicate that representation was defective or unprofessional). In determining what constitutes fair compensation, the Court has considered the factors enumerated in the Guidelines for the Administration of the Criminal Justice Act ("CJA Guidelines"), including:

> [the] responsibilities involved measured by the magnitude and importance of the case; manner in which duties were performed; knowledge, skill, efficiency, professionalism, and judgment required of and used by counsel; nature of counsel's practice and injury thereto; any extraordinary pressure of time or other factors under which services were rendered; and any other circumstances relevant and material to a determination of a fair and reasonable fee.

VII Admin. Office of U.S. Courts, Guide to Judiciary Policies and Procedures § 2.22(3); see also Diaz, 802 F. Supp. at 308

(noting courts' duty to ascertain fair compensation "regardless of the amount of fees requested").

After review of the billing records provided and reflection upon defense counsel's performance in this case, the Court finds most of the claimed compensation to be fair and reasonable, with three notable exceptions. First, the Court questions the reasonableness of the time billed for preparing Siegel's two written sentencing submissions. Siegel billed 4.7 hours and 4.5 hours for preparing the first and second sentencing submissions, respectively. The first submission spans four pages and contains no case citations, save for a passing, uncited reference to United States v. Booker, 543 U.S. 220 (2005). This submission briefly recites the defendant's factual objections to the PSR and urges the Court to depart from the standard loss-causation analysis and allow Mukhtaar's cooperation to mitigate his sentence, pursuant to Booker and 18 U.S.C. § 3553. See United States v. Mukhtaar, 06 Cr. 31 (SWK), Dkt. 40. The second submission spans two pages and largely rehashes the arguments presented in the first submission. See United States v. Mukhtaar, 06 Cr. 31 (SWK), Dkt. No. 45. The Court recommends that Siegel receive compensation for only 4.6 of the 9.2 total hours claimed for drafting these documents. Second, Siegel claims compensation for nine tenths of an hour's work on January 20, 2008, justified only by the line entry "legal." Even if the

Court construes this to mean "legal research," it cannot assess the reasonableness of the claimed time without knowing to which aspect of Mukhtaar's case the research pertained. It therefore cannot certify compensation for this time. Cf. Diaz, 802 F. Supp. at 309 & n.13 (characterizing such "cursory" line entries as "too vague").

The third, and most troubling, problem with Siegel's billing records is the absolute illegibility of multiple entries. The Court is unable to decipher the justifications offered for the time billed on the following dates: October 6, 2007 (1.8 hours);[1] December 7, 2007 (2 hours); December 19, 2007 (2.4 hours); December 29, 2007 (1.5 hours); and April 1, 2008 (0.9 hours). Certifying compensation for these entries would almost certainly qualify as "rubber stamp" review. Cf. Sepulveda, 502 F. Supp. 2d at 1105. Thus, the Court will not recommend compensation for the time represented in the illegible entries.

## III. CONCLUSION

In summary, the Court hereby certifies compensation in the following amounts: 18.6 hours in 2007, at a rate of $94/hour,[2]

---

[1] It is possible that the October 6, 2007 entry line reads "legal research." Even if the Court construes the handwriting in this fashion, however, it is too conclusory to justify compensation.

[2] The maximum hourly rate for services performed on or after May 20, 2007, and before January 1, 2008, is $94/hour. CJA Guidelines § 2.22.

for a yearly total of $1,748.40; and 47.3 hours in 2008, at a rate of $100/hour,[3] for a yearly total of $4,730.00. In all, then, the Court certifies Siegel's compensation in the amount of $6,478.40.

SO ORDERED.

                                              _____
                                              SHIRLEY WOHL KRAM
                                          UNITED STATES DISTRICT JUDGE

Dated:    New York, New York
           May 21, 2008

---

[3] The maximum hourly rate for services performed after January 1, 2008, is $100/hour. CJA Guidelines § 2.22.

for a yearly total of $1,748.40; and 47.3 hours in 2008, at a rate of $100/hour,[3] for a yearly total of $4,730.00. In all, then, the Court certifies Siegel's compensation in the amount of $6,478.40.

SO ORDERED.

---
SHIRLEY WOHL KRAM
UNITED STATES DISTRICT JUDGE

Dated: New York, New York
       May 21, 2008

---

[3] The maximum hourly rate for services performed after January 1, 2008, is $100/hour. CJA Guidelines § 2.22.